UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.   CASE NO. 8:20-cr-292-VMC-CPT

JORDAN JSYAE PULIDO

**UNITED STATES' SENTENCING MEMORANDUM**

The United States files this sentencing memorandum requesting that this Court sentence defendant Jordan Jysae Pulido to a term of imprisonment within his advisory guideline range followed by the maximum term of supervised release. In support thereof, the government states as follows:

**I.    Background**

**a. Offense Conduct**

When defendant Pulido was 23 years old, he met the then 14-year-old child victim, who resided in Croatia, online. They communicated via various social media platforms, and they eventually became romantically involved. Defendant Pulido and the child victim would engage in video chats, during which they would see each other masturbate, which they referred to as "pillow talk."

Eventually, Pulido traveled from his residence in Florida to stay with the

1

child victim and her family in Croatia for approximately six weeks. While there, on the child victim's fifteenth birthday, Pulido had sex with the child victim and asked her to marry him. Pulido and his father, codefendant Roberto Santana Jimenez, arranged for the child victim and her family to travel to their residence in the Middle District of Florida, purportedly to thank them for taking in Pulido during his trip to Croatia. While at the defendants' home, Pulido and the child victim continued having sex.

Although the child victim was supposed to return to Croatia with her family, on the morning of her return flight, she and Pulido left the residence so that she would miss the flight. Jimenez persuaded the child victim's family to travel back to Croatia without the child, warning the child's mother that there could be adverse law enforcement consequences if she went to the police.

Upon the family's arrival in Croatia, the child victim's mother received a distress text message from the child victim indicating that she wanted to return home but that the defendants were preventing her from doing so. The mother contacted Croatian law enforcement. Upon learning about the situation, Florida law enforcement officers recovered the child victim from the defendants' home. The next day, Pulido fled to Mexico, returning about a month later after a family member advised him that it was safe to return to the United States.

### b. Procedural History

On September 24, 2020, a federal grand jury charged Pulido with enticement and coercion of a minor, in violation of 18 U.S.C. § 2422(b); traveling with the intent to engage in illicit sexual conduct with a minor, in violation of 18 U.S.C. § 2423(b); conspiracy (along with codefendant Jimenez) to transport a minor with the intent to engage in sexual activity, in violation of 18 U.S.C. §§ 2423(a) and (e); and transportation of a minor with the intent to engage in sexual activity, in violation of 18 U.S.C. § 2423(a). Doc. 1. On October 18, 2021, Pulido proceeded to trial. Doc. 176. On October 28, 2021, a federal jury found Pulido guilty as charged. Doc. 195. Pulido's sentencing is scheduled for February 23, 2022. Doc. 235.

## II. Presentence Investigation Report

On February 16, 2022, probation issued its Final Presentence Investigation Report ("PSR") as to the defendant. Doc. 239. Pursuant to the PSR, Pulido's applicable Guidelines range for the underlying offense is life with a mandatory minimum of 10 years' imprisonment. *Id*. at ¶¶ 107, 108; he has a criminal history category of I; and the applicable period of supervised release is not less than five years up to life. *Id*. at ¶ 108. Defense counsel has set forth legal objections to the information stated in the PSR. *Id*. at 49-53. The United States agrees with U.S. Probation Office's guidelines calculation and analysis outlined

in the addendum to the PSR.

### III. Argument for a Guidelines Sentence

A Guidelines sentence is necessary due to the history and characteristics of the defendant, and for both deterrence of these crimes and for the protection of the public against the defendant. *See* 18 U.S.C. § 3553(a). The United States recognizes that a sentencing court may not presume that a sentence within the advisory guideline range is reasonable; however, the Guidelines remain a significant and pivotal component of the sentencing process. The Court "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter." *Nelson v. United States*, 129 S. Ct. 890, 891-92 (2009). Section 3553(a)(1) provides that, in determining a sentence, courts must consider the nature and circumstances of the offense, as well as the history and characteristics of the defendant. Additional factors outlined in § 3553(a)(2) include the need for the sentence to reflect the seriousness of the offense; to promote respect for the law; to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed education or vocational training, medical care, or other corrective treatment in the most

effective manner. 18 U.S.C. § 3553(a)(2). A consideration of these factors warrants a Guideline sentence.

### a. Nature and Circumstances of the Offense

Pulido, a then 23-year-old man, persuaded, induced, enticed, and coerced a then 14-year-old Croatian child to engage in a sexual relationship with him. The evidence presented at trial showed that Pulido began a teacher-student relationship with the child victim, teaching her how to play the guitar online. At some point, however, the innocent teacher-student dynamic shifted when Pulido began to pursue the child victim romantically despite knowing she was 14 years old. On March 25, 2018, the two became "official" – meaning they were boyfriend and girlfriend. Shortly thereafter, Pulido began engaging in "pillow talk" as a method to groom the child victim for sexual activity when they were to eventually meet in Croatia. Pulido chose to involve his father, Jimenez, in his relationship with the child victim. Pulido discussed engaging in "pillow talk" with Jimenez and his plans to travel to Croatia, propose to the child victim, and bring her back with him to the United States.

At trial, the United States admitted thousands of pages of Facebook, WhatsApp, Skype, iMessages, and other communication between Pulido and the child victim, as well as communications between Pulido and his various family members that illustrated the enticement and coercion of the child victim.

5

*See* Gov. Trial Exh. 3A-K, 4, 5, 6, 7, 9, 9A, 10, 30C, 30D, 30E, 30G, and 30H. The communications revealed that while Pulido frequently sought advice from his father on how to manipulate the child victim, Pulido did not consult his father every step of the way and set boundaries with his father as it related to Pulido's relationship with the child victim. For example, there was no evidence admitted at trial that Jimenez told Pulido to entice the child victim by sending partially nude photos of himself to the child victim. *See* Gov. Trial Exh. 6A. Likewise, there was no evidence admitted at trial that Jimenez told Pulido to entice the child victim by sending overt and covert sexually explicit messages, describing the sex acts Pulido wished to perform on the child victim. *See* Gov. Trial Exh. 3E, 3G, and 3I. Pulido did, however, involve his father in the overall plan to transport the child victim to the United States to further his sexual exploitation of the child victim.

Pulido and Jimenez conspired with each other, and other unindicted family members, to coordinate Pulido's travel to Croatia and the victim's travel from Croatia to his residence in Trinity, Florida. The evidence showed that Pulido and Jimenez manipulated the child victim and her family members, concocting a plan to have the child victim miss her scheduled flight back to Croatia, seek asylum, and reside in Florida with Pulido as his child bride. Regardless of Pulido and Jimenez's cultural background, they both knew the

child victim was a minor and knew that any relationship between Pulido and the child victim was illegal in the United States.

### b. History and Characteristics of the Defendant

Nothing in Pulido's background provides a rationale or explanation for his prolonged criminal conduct in this case. He has no criminal history and was reared in a two-parent home with his five brothers, free from any abuse and neglect. Pulido was recently diagnosed with generalized anxiety disorder, post-traumatic stress disorder, and autism spectrum disorder. Doc. 241 at 17-19.

Pulido alleges that not only is his father to blame for his criminal conduct, but his alleged diagnosis of autism spectrum disorder (ASD) somehow supports a variance at sentencing. This argument, however, is routinely rejected because – just like the case at bar – the Pulido's alleged diagnosis of ASD seems to always occur for the first time after the criminal investigation was initiated and is miraculously discovered by a defense expert hired to help ensure that the defendant receives a lower sentence. *See United States v. Dholehide*, Case No. 10-CR-92-LRR, 2011 WL 1812795, *4 (May 6, 2011 N.D. Iowa) (rejecting claim that autism diagnosis, which was only made after criminal investigation by "experts" paid for in criminal case, supported downward departure) (unpublished opinion, cited for illustrative purposes). As noted by the *Dholehide* court, these types of arguments are routinely made in these prosecutions in

7

efforts to obtain lower criminal sentences. *Id.*

This is exactly what happened here. The only evidence of Pulido's alleged diagnosis of ASD is contained in a report provided by defense expert Dr. Valerie McClain. *See* Doc. 241 at 17-19. Dr. McClain, who appears to be the only person who has ever diagnosed Pulido with ASD, did so after these charges were initiated and after she was hired (and presumably paid) by the defense in this case. Even if the Court presumes Pulido suffers from ASD, Pulido's mental health challenges, however, do not absolve him of the need to be fully held accountable for his criminal conduct.

### c. Need to Promote Respect for the Law and Need for Deterrence, Protect the Public from Further Crimes of the Defendant, and Provide Just Punishment

The need for the sentence imposed in this case to promote respect for the law and to provide adequate deterrence to criminal conduct is significant. Pulido did not have a solitary lapse in judgment. Over a course of months, Pulido persuaded, induced, enticed, and coerced the child victim into a sexual relationship. After months of grooming the child victim to engage in sexual activity, he traveled to Croatia to bring his internet-based relationship to real life. He proposed to the child victim, giving her an engagement ring, engaged in sexual intercourse to consecrate their union, and had his family aid in purchasing travel visas and airline tickets for the child victim and her family to

travel to the United States. Pulido and his family planned to have the child victim remain in the United States and continue in a morally and legally abhorrent relationship with him. Pulido's persistence in the manipulation and sexual exploitation of the child victim online, in Croatia, and here in the Middle District of Florida is evidence of the need to protect the public and provide just punishment. Accordingly, there is a strong need to impose a severe sentence that will serve as a warning to Pulido and individuals considering similar conduct. A lengthy sentence will deter comparable activities and convey that such behavior is unacceptable and will be adjudicated harshly within the Eleventh Circuit.

Moreover, there is a need to protect the public from further crimes of the defendant. Pulido maintains that his criminal conduct is the result of an overbearing father and suffers from "child-like" autism. Much like his father, Pulido seeks to place the blame on outside circumstances as opposed to accepting reality. In this country and in this state, when a 24-year-old engages in illicit sexual conduct with a 15-year-old, it's called rape. Pulido's father didn't make him repeatedly rape the child victim and neither did Pulido's alleged ASD. By refusing to accept that his conduct is in fact reprehensible, unlawful, and a result of his own predatory inclination, Pulido has volunteered to illustrate the repercussions for behavior a civilized society deems unacceptable.

9

**IV. Conclusion**

Pulido's sentence should fairly account for the scope of his criminal endeavors, acknowledge the harm that he has caused to the victim, and acknowledge the ramifications of his actions. For the aforementioned reasons, the United States respectfully requests that this Court issue the only reasonable sentence for the defendant—a Guideline term of imprisonment followed by the maximum term of supervised release.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By: */s/ Lisa M. Thelwell*
Lisa M. Thelwell
Assistant United States Attorney
Florida Bar No. 100809
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: lisa.thelwell@usdoj.gov

U.S. v. Jordan Pulido                                  Case No. 8:21-cr-292-VMC-CPT

## CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Samuel Landes, Esq.

/s/ Lisa M. Thelwell
Lisa M. Thelwell
Assistant United States Attorney
Florida Bar No. 100809
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone:  (813) 274-6000
Facsimile:  (813) 274-6358
E-mail:     lisa.thelwell@usdoj.gov